UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

    - against -

STEPHEN KENNETH LEECH,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ECF Case

No. 24 Civ. 9017 (KPF)

# THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION TO INTERVENE AND FOR A COMPLETE STAY

                              EDWARD Y. KIM
                              Acting United States Attorney for the
                              Southern District of New York

Peter J. Davis
Thomas S. Burnett
Assistant United States Attorneys

    *- Of Counsel -*

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1
FACTUAL BACKGROUND ..................................................................................................... 2
ARGUMENT ............................................................................................................................... 5
   I.    THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE. ... 5
   II.   A COMPLETE STAY OF THIS ACTION IS APPROPRIATE. .................................... 7
      A.    Applicable Law ........................................................................................................ 7
      B.    Discussion ................................................................................................................ 8
         1.   *The Extent of the Overlap* ................................................................................ 8
         2.   *The Status of the Criminal Case* ..................................................................... 9
         3.   *The Potential Prejudice to the Parties* .......................................................... 10
         4.   *The Interests of the Court* .............................................................................. 10
         5.   *The Public Interest* ........................................................................................ 11
CONCLUSION .......................................................................................................................... 14

# Table of Authorities

Page(s)

Cases

*Bd. of Governors of the Federal Reserve System v. Pharaon*,
   140 F.R.D. 634 (S.D.N.Y. 1991) ............................................................................................. 12
*Bureerong v. Uvawas*,
   167 F.R.D. 83 (C.D. Cal. 1996) ................................................................................................. 6
*Campbell v. Eastland*,
   307 F.2d 478 (5th Cir. 1952) ................................................................................................... 12
*In re Par Pharm, Inc. Sec. Litig.*,
   133 F.R.D. 12 (S.D.N.Y. 1990) ................................................................................................. 9
*Kashi v. Gratsos*,
   790 F.2d 1050 (2d Cir. 1986) .................................................................................................... 7
*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) .................................................................................................................. 7
*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
   676 F.3d 83 (2d Cir. 2012) .................................................................................................... 7, 8
*Parker v. Dawson*,
   No. 06 Civ. 6191 (JFB), 2007 WL 2462677 (E.D.N.Y. Aug. 27, 2007) ................................... 8
*Phillip Morris Inc. v. Heinrich*,
   No. 95 Civ. 328 (LMM), 1996 WL 363156 (S.D.N.Y. June 28, 1996) .................................. 12
*SEC v. Beacon Hill Asset Management LLC*,
   No. 02 Civ. 8855 (LAK), 2003 WL 554618 (S.D.N.Y. Feb. 27, 2003) ................................. 12
*SEC v. Calabrigo*,
   No. 22 Civ. 3096 (LJL), 2022 WL 4752427 (S.D.N.Y. Sept. 30, 2022) ................................ 12
*SEC v. Carroll*,
   No. 19 Civ. 7199 (AT), 2020 WL 1272287 (S.D.N.Y. Mar. 17, 2020) ................................... 2
*SEC v. Chestman*,
   861 F.2d 49 (2d Cir. 1988) ........................................................................................................ 6
*SEC v. Contorinis*,
   No. 09 Civ. 1043 (RJS), 2012 WL 512626 (S.D.N.Y. Feb. 3, 2012) ..................................... 10
*SEC v. Credit Bancorp.*,
   297 F.3d 127 (2d Cir. 2002) ...................................................................................................... 6
*SEC v. Hwang, et al.*,
   No. 22 Civ. 3402 (JPO), 2023 WL 6124041 (S.D.N.Y. Sept. 19, 2023) .................................. 1
*SEC v. Javice*,
   No. 23 Civ. 2795 (LJL), 2023 WL 4073797 (S.D.N.Y. June 20, 2023) ................................... 1
*SEC v. Nicholas*,
   569 F. Supp. 2d 1065 (C.D. Cal. 2008) ...................................................................... 11, 12, 13
*SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*,
   No. 11 Civ. 6500 (RA), 2012 WL 5505738 (S.D.N.Y. Nov. 9, 2012) ................................... 10
*Shkreli*,
   2016 WL 1122029 .................................................................................................................... 9
*Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*,

    886 F. Supp. 1134 (S.D.N.Y. 1995) ........................................................................................ 9
*Twenty First Century Corp. v. LaBianca*,
    801 F. Supp. 1007 ............................................................................................................ 6, 10
*United States v. McCarthy*,
    292 F. Supp. 937 (2d Cir. 1968) .......................................................................................... 11
*United States v. One 1964 Cadillac Coupe DeVille*,
    41 F.R.D. 352 (S.D.N.Y. 1966) ............................................................................................. 8
*United States v. Percevault*,
    490 F.2d 126 (2d Cir. 1974) ................................................................................................ 11
U*nited States v. S. Kenneth Leech II,*
    24 Cr. 658 ............................................................................................................................. 1
*Volmar Distrib., Inc. v. New York Post Co., Inc.*,
    152 F.R.D. 36 (S.D.N.Y. 1993) ......................................................................................... 7, 8

**PRELIMINARY STATEMENT**

The United States of America, by and through the Acting United States Attorney for the Southern District of New York (the "Government"), respectfully submits this memorandum in support of its application (i) to intervene in the above-captioned case, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (ii) to stay this matter in its entirety until the conclusion of the parallel criminal case, *United States v. S. Kenneth Leech II*, 24 Cr. 658 (GHW) (the "Criminal Case"). Counsel for the defendant has informed the Government that his client does not oppose the Government's request for a stay.[1] Counsel for the Securities and Exchange Commission ("SEC") have informed the Government that the SEC takes no position on the Government's request for a stay.

The Criminal Case arises from the same set of facts and circumstances that underlie this action. As a result, a full stay is appropriate because any exchange of discovery in this action would be asymmetrical and would allow the defendant to circumvent the criminal discovery rules and improperly tailor his defense in the Criminal Case. In similar situations, courts in this Circuit and others have often entered a stay of parallel civil actions when there is a related criminal prosecution with overlapping defendants and facts, even over a defendant's objection, a circumstance not present here. *See, e.g.*, *SEC v. Hwang, et al.*, No. 22 Civ. 3402 (JPO), 2023 WL 6124041, at *18-19 (S.D.N.Y. Sept. 19, 2023) (granting government's motion for a full stay of discovery over objection of defendants); *SEC v. Javice*, No. 23 Civ. 2795 (LJL), 2023 WL 4073797, at *4-8 (S.D.N.Y. June 20, 2023) (granting full stay of discovery over defendant's objection and alternative suggestion of partial stay of discovery); *CFTC v. Alexandre*, No. 22 Civ. 3822 (VEC), Dkt. No. 160 (S.D.N.Y. Sept. 2, 2022) (granting full stay over defendant's objection

---

[1] The Government conferred with Jonathan Sack, Esq., counsel to the defendant.

1

and proposal to permit depositions to proceed); *SEC v. Milton*, No. 21 Civ. 6445 (AKH), Dkt. No. 40 (S.D.N.Y. Aug. 8, 2022) (granting government's motion for a full stay over defendant's objection); *SEC v. Sarshar*, No. 20 Civ. 6865 (GBD), Dkt. No. 35 (S.D.N.Y. June 3, 2021) (same); *SEC v. Carroll,* No. 19 Civ. 7199 (AT), 2020 WL 1272287, at *2-5 (S.D.N.Y. Mar. 17, 2020) (granting, over defendants' opposition, a full stay).

For the reasons that follow, the Government respectfully requests that this Court enter an order staying this action until the completion of the Criminal Case.

## FACTUAL BACKGROUND

This case and the parallel Criminal Case arise out of the same underlying events. On November 25, 2024, Indictment 24 Cr. 658 (GHW) (the "Indictment") was unsealed, charging Leech with investment adviser fraud, securities fraud, and commodities fraud offenses. (*See* Indictment (Ex. A)). Also on November 25, 2024, the SEC filed a complaint against Leech alleging violations of securities laws related to the same fraudulent cherry-picking scheme (the "Complaint").

As alleged in the Indictment and the SEC Complaint, between in or about 2021 and October 2023, Leech committed fraud and abused the trust placed in him by clients of the investment-management company Western Asset Management ("WAMCO"). (Indictment ¶ 1; Complaint ¶ 1.) Leech engaged in a scheme commonly known as "cherry picking." (Indictment ¶ 1; Complaint ¶ 1.) He did so to compensate for losses in his marquee investment strategy by assigning trades that performed well during their first day into client accounts associated with that strategy, and assigning trades that performed poorly over their first day into the accounts of other clients, who were not aware that Leech was causing them losses to favor others. (Indictment ¶ 1; Complaint ¶¶ 1-9, 37-52.) Over the course of his criminal scheme, Leech allocated trades with net first-day gains of over $600 million to his favored strategy and clients, and allocated trades

2

with net first-day losses of over $600 million to clients to whom he owed an equal fiduciary duty. (Indictment ¶¶ 1-6; Complaint ¶¶ 1-9.)

Leech was able to carry out this scheme because, as WAMCO's Chief Investment Officer, Leech was responsible for making trades on behalf of different portfolios and then assigning those trades to a particular portfolio—a process generally known as "allocation." (Indictment ¶¶ 1-6; Complaint ¶¶ 88-116.) One set of portfolios for which Leech traded followed what WAMCO called the "Macro Opportunities" strategy ("Macro Opps"), which Leech promoted as reflecting his and WAMCO's best ideas. Another set of portfolios followed what WAMCO called the "Core" and "Core Plus" strategies (together, the "Core Strategies"). (Indictment ¶¶ 1-12; Complaint ¶¶ 37-52.) Leech owed a fiduciary duty to any client who invested in portfolios that followed either of these strategies. (Indictment ¶¶ 1-12; Complaint ¶¶ 77-87.)

Despite that duty, and in violation of it, Leech engaged in a fraudulent scheme to bolster Macro Opps, which necessarily came at the expense of the Core Strategies, by allocating trades based on their performance between the time he placed the trades and the time he made his allocations. (Indictment ¶¶ 1-6, 13-20; Complaint ¶¶ 117-144.) He carried out this scheme by placing trades, waiting to see how those trades performed throughout the day, and then using the first-day performance of his trades to determine in which portfolio to allocate those trades—assigning better-performing trades to Macro Opps and worse-performing trades to the Core Strategies. (Indictment ¶¶ 1-6, 13-20; Complaint ¶¶ 117-144.) This was prohibited by WAMCO's policies, which did not allow traders to allocate trades on the basis of first-day performance to make up for losses. (Indictment ¶¶ 1-6, 13-16; Complaint ¶¶ 88-116.)

Neither Leech nor WAMCO disclosed to investors that Leech used first-day performance to decide how to allocate trades, or that Leech was favoring Macro Opps in his allocations.

(Indictment ¶¶ 1-6, 13-16; Complaint ¶¶ 88-116, 145-152.) To the contrary, WAMCO represented to investors that Leech and others knew where they planned to allocate a trade before making the trade and finalized the allocation promptly after the trade was completed. (Indictment ¶¶ 1-6, 13-16; Complaint ¶¶ 88-116, 145-152.) WAMCO trained Leech and others that they should not wait hours after trading before allocating their trades, but instead should allocate promptly after the trades were completed. (*Id.*) Leech did not follow this process. (Indictment ¶¶ 1-6, 13-20; Complaint ¶¶ 88-116.) He routinely waited hours after making his trades—often until late in the day—to make his allocations, which provided him the opportunity to observe how his trades had performed before deciding where to allocate them. (*Id.*) Between 2021 and October 2023, Leech used that ability to see how the market moved to support Macro Opps by awarding it better performing trades, while hiding worse performing trades in the Core Strategies. (Indictment ¶¶ 1-6, 13-20; Complaint ¶¶ 117-144, 153-159.)

By allocating trades based on first-day performance Leech improperly bolstered the overall performance of Macro Opps, at the expense of the larger Core Strategies. (*Id.*) Each time LEECH assigned a trade with a first-day gain to Macro Opps, or assigned a trade with a first-day loss to the Core Strategies, LEECH improved or protected the daily performance of Macro Opps. (*Id.*) LEECH took these steps to boost the daily performance of Macro Opps consistently over time, thereby significantly enhancing the overall performance of Macro Opps. (*Id.*) From January 2021 through October 2023, the U.S. Treasury ("Treasury") futures and options trades that LEECH allocated specifically to Macro Opps had net first day gains of over $600 million. By contrast, during this period, the Treasury futures and options trades that LEECH allocated specifically to the Core Strategies had net first day losses of over $600 million. (Indictment ¶¶ 1-6, 13-20; Complaint ¶¶ 1-9, 117-144, 153-159.)

As a result of this conduct, the SEC charged Leech in this case with violating the antifraud provisions of Section 17 of the Securities Act, Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder, violations of Sections 206 of the Advisers Act and Sections 36(a), and 37 of the Investment Company Act.   (Complaint ¶ 5.)   The Criminal Case against the defendant will involve proof of substantially all of the conduct alleged in the SEC Complaint.

## ARGUMENT

The Government's requests to intervene and for a complete stay of this civil action should be granted.   If this case were to proceed, there would be a risk of significant interference with the Criminal Case.   A complete stay would prejudice no party to this civil action; would prevent the circumvention of important statutory limitations on criminal discovery and avoid asymmetrical discovery; and would preserve the Court's resources because many of the issues presented by the civil action are likely to be resolved in the Criminal Case.   Significantly, none of the parties to this civil action opposes the Government's request.

I.      **THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE.**

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests.'"   Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact."   The Government respectfully submits that its application satisfies both of these provisions, given the effect upon the Criminal

5

Case this civil proceeding would have and the similarity of facts and claims between the parallel proceedings.

As a general rule, courts "have allowed the government to intervene in civil actions—especially when the Government wishes to do so for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992; *see also SEC v. Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

Intervention is warranted because the Government's interests in upholding the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represents the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong v. Uvawas,* 167 F.R.D. 83 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the plaintiff or the defendants have this identical interest.").

Moreover, discovery and a trial in this action in advance of a criminal trial, could impair or impede the Government's ability to protect its interests in the enforcement of federal criminal law. This case and the related Criminal Case center on the same cherry-picking scheme. Holding a civil trial before the criminal proceedings would create the possibility that there will be two trials covering the same fraudulent acts. This raises the probability that witnesses will be unnecessarily burdened by having to testify twice. In light of those circumstances, the Government respectfully submits that its application to intervene should be granted.

## II.   A COMPLETE STAY OF THIS ACTION IS APPROPRIATE.

### A.   Applicable Law

This Court has the inherent power to stay civil proceedings in the interests of justice pending the completion of a parallel criminal trial. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action." (internal citations and quotations omitted)). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In evaluating whether to grant such a stay, courts in this Circuit consider:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest.

*Louis Vuitton*, 676 F.3d at 99. "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). But the factors "can do no more than act as a rough guide for the district court as it exercises its discretion" and do not replace the Court's "studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Louis Vuitton*, 676 F.3d at 99. The Court's "decision ultimately requires and must rest upon a

7

particularized inquiry into the circumstances of, and the competing interests in, the case." *Id.* (quotation marks omitted).

### B. Discussion

Application of each of these factors here weighs in favor of the stay sought by the Government.

#### 1. The Extent of the Overlap

That the facts of the civil case overlap substantially with the Criminal Case and that similar issues will be decided in each case weigh heavily in favor of a stay. "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues." *Volmar Distrib.*, 152 F.R.D. at 39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also Parker v. Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (same); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

Here, as described above, the facts of this case overlap significantly with the facts alleged in the Criminal Case. The defendant in the Criminal Case is also charged in the Civil Case and the Criminal Case will involve proof of substantially all of the same facts through the same witnesses.

Even in situations where a regulator has made allegations against additional defendants, or even alleged additional misconduct—a circumstance not present here—courts generally stay discovery where there is "substantial overlap between the civil and criminal proceedings." *SEC v. Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43, at 2-3 (S.D.N.Y. Mar. 1, 2016) (ordering a partial

8

stay of discovery, over opposition, notwithstanding that some fraudulent conduct charged in the civil case was not referenced in the criminal indictment); *SEC v. Bauer et al.*, No. 22 Civ. 3089 (RA), ECF No. 62 (ordering complete stay of discovery where the fraudulent conduct charged in the civil case included defendants not named as defendants in the criminal case and covered a broader set of stocks than the criminal indictment). That is not surprising given that, whether the regulatory action is broader than the Criminal Case or vice-versa, the issue relevant to whether a stay is appropriate is the same: whether it is likely that substantially the same set of facts would have to be proven twice in two different proceedings, draining resources from the courts and from the Government, and inconveniencing witnesses. *See, e.g.*, *SEC v. Shkreli*, 15 Civ. 7175 (KAM), 2016 WL 1122029, at *4 (E.D.N.Y. March 22, 2016); *Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43, at 3. Here, that is unambiguously the case.

Accordingly, this factor weighs heavily in favor of a stay. *See, e.g.*, *Shkreli*, 2016 WL 1122029, at *4 ; *Tuzman*, No. 15 Civ. 7057 (AJN), Dkt. 43, at 3 (S.D.N.Y. Mar. 1, 2016).

### 2. The Status of the Criminal Case

The filing of the Indictment in the Criminal Case is also a factor that weighs in favor of a stay. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (quotation and citation omitted). Indeed, "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990); *see also Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced

9

since the criminal case will likely be quickly resolved."). Although a trial date has not yet been set, Leech has been formally indicted and appeared before the District Court. The Government is producing Rule 16 discovery to Leech. The steady forward progress of the Criminal Case strongly favors a stay. *See Tuzman*, No. 15 Civ. 7057 (AJN), at 3 (noting that an indictment normally weighs heavily in favor of a stay absent particular facts indicating that the criminal case may not be resolved expeditiously).

### 3. The Potential Prejudice to the Parties

As neither the SEC nor the defendant opposes a full stay, there is no prejudice to any party.[2] Indeed, with respect to the defendant, granting a stay of this case to permit the Criminal Case to proceed to conclusion would in fact benefit the defendant, as granting a stay of this case would, for now, obviate the defendant from being forced to choose between being prejudiced in this case by the assertion of his Fifth Amendment rights or being prejudiced in the Criminal Cases if waiving those rights. In sum, no party will suffer any unfair prejudice from a complete stay.

### 4. The Interests of the Court

Considerations of judicial economy also weigh in favor of granting a stay. Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action. *Cf. SEC v. Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *Global Indus.*, 2012 WL 5505738, at *4 ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-

---

[2] Where the SEC, the plaintiff in the litigation, does not oppose a stay, "[t]his position perhaps indicates support for a stay, but at the very least makes clear that the SEC does not believe it will be prejudiced by one." *SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012).

11 (recognizing judicial economy as a factor to be considered). Because the Criminal Case's outcome will likely affect the conduct, scope, and result of the civil proceeding, potentially streamlining issues in this matter and avoiding duplication of effort and judicial resources, this factor favors the Government's application.

### 5. The Public Interest

The Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery—restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

In *Tuzman*, Judge Nathan outlined three principal Government interests justifying a stay of discovery of civil proceedings while parallel criminal proceedings are pending:

> First, broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence. Second, revelation of the identity of prospective witnesses may create the opportunity for intimidation. Third, criminal defendants may unfairly surprise the prosecution at trial with information developed through [civil]

> discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.

*Tuzman*, No. 15 Civ. 7057 (AJN), at 3-4 (internal citations and quotations omitted). Based on these concerns, judges in this District have frequently granted Government requests to limit discovery in a parallel civil action in order to prevent the civil discovery rules from being subverted into a device for improperly obtaining discovery in the criminal proceeding. *See, e.g.*, *id.* (granting stay sought by Government); *SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting government's motion to stay, court noted: "The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'" (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952))).

Indeed, the rationale underlying a stay is even stronger in case where the defendant has been indicted, given that a defendant in a charged criminal case will likely invoke his Fifth Amendment rights in the civil case and not participate in the very civil discovery process he seeks to use affirmatively. *See, e.g.*, *SEC v. Calabrigo*, No. 22 Civ. 3096 (LJL), 2022 WL 4752427, at

*5 (S.D.N.Y. Sept. 30, 2022) (discussing strategic use by a defendant of his Fifth Amendment right in civil proceedings); *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants"). A denial of the Government's requested stay would therefore result in asymmetrical discovery in this case, pursuant to which the defendant would be able to obtain statements from relevant witnesses through depositions and use other discovery mechanisms such as requests for admission and interrogatories to obtain information from the SEC, while the SEC would be unable to use any of these discovery mechanisms to obtain information from the defendant because of his likely assertion of Fifth Amendment rights. Such asymmetry is both unfair and a circumvention of the criminal discovery rules that govern when criminal defendants are entitled to obtain prior statements of the Government's trial witnesses. *See* 18 U.S.C. § 3500(b) (prior statements of Government witnesses must be made available after the witnesses have testified on direct examination).

Therefore, in order to avoid circumvention of the criminal discovery restrictions, including the provisions that are designed to prevent a defendant from tailoring his testimony and obtaining asymmetrical discovery, and because the defendant will not in any way be prejudiced in preparing and defending himself, this factor weighs in favor of the Government's application.

## **CONCLUSION**

For the reasons set forth above, the Government respectfully requests that its application to intervene and for a complete stay of this matter be granted.

Dated: New York, New York
January 14, 2025

Respectfully submitted,

EDWARD Y. KIM
Acting United States Attorney

By: /s
Peter J. Davis
Thomas Burnett
Assistant United States Attorneys
26 Federal Plaza
New York, New York 10278
Telephone: (212) 637-2468 / 1064